## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MONICA R. CLYBURN,**

           **Plaintiff,**

**v.**                                    **Case No.  8:12-cv-280-T-30TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

           **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

### A.

Plaintiff was forty-two years old at the time of her administrative hearing in May 2011.  She stands 5 feet 7 inches tall and weighed 274 pounds at that time.  Her past relevant work was in retail at Goodwill.  She operated a forklift while in prison.  Plaintiff applied for Supplemental Security Income payments in September 2009, alleging disability as of March

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

1, 2005, by reason of osteoarthritis, rheumatoid arthritis, knee and hip impairments, tight heel cords, and depression.  Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.

In essence Plaintiff claimed she is unable to work due to pain in her neck, back, knees, and feet.  She testified to having a number of surgeries including back surgery and left knee replacement in 2009 and right knee replacement in 2010.  She takes Oxycodone for pain and Xanax for anxiety and heart palpitations.  She claimed to need reconstructive surgery on her feet but cannot due to arthritis.  The podiatrist is recommending she wear braces.  She also testified she suffers from bulging discs in her neck and back and indicated she wants to see a neurologist for the pain.  She testified she uses a TENS unit on her back daily.  Over compensation for her knees has led to problems in her hip and foot as well.  She has pain in her left foot when she walks caused by tight heal cord.  She elevates her foot for relief.  She has rheumatoid arthritis in her feet and hands and her hands cramp and she experiences sharp pain.  She has suffered headaches for a long time and experiences them one or two times a week.  She use ice packs and lies down for relief.

Plaintiff claimed a very dormant daily regimen.  According to Plaintiff, she stays in bed most of the day with her infant child.  She sleeps and watches television.  She occasionally goes to the porch for a time but then returns to bed.  She does some care for her child but does not carry him; she has help from her sister.  She goes grocery shopping but

2

uses an electric cart.  She can drive but does so only for short distances because of pain in her neck and back.

Her knee conditions cause problems with bending and squatting fully.  Use of her hands is limited.  She cannot grip things tightly and has dropped things.  Occasionally, she has problems with buttons.  Her balance is okay on flat surfaces.  She can sit for thirty to sixty minutes but cannot stand for long.  She can walk without a cane but not comfortably and she uses one to help her get up.  She can walk less than a block and then her legs hurt.  She denied she could lift a gallon of milk but acknowledged she could lift her twenty-six pound child.  She sleeps well at night.

Plaintiff worked for a time as a sorter and hanger and then as a cashier for Goodwill, but she missed a lot of work and ultimately was let go.  She also answered phones part-time for Well Care customer service but was let go for missing work.  While in prison, she operated a fork lift at a distribution center and claims she was a very hard worker.  She was lifting fifty pounds in that work.  When she could not do the job anymore, she took courses in catering.  Earnings reflected for 2009 were generated by catering work but are not all hers.  She did not work in 2010 due to pain and medications.  (R. 39-72).

Next, the ALJ took testimony from Anita Rothard, a vocational expert ("VE").  After classifying Plaintiff's past work as a cashier, garment sorter, caterer helper, and policy holder information clerk, the VE testified on a hypothetical question assuming a person with a high school education capable of light exertional work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, scaffolds, or ropes; no work at open heights; and avoidance of extreme vibration.  By the VE's testimony,

3

such person could do Plaintiff's past work as a cashier, garment sorter, and caterer's helper, and, at the sedentary level, the work as an policy holder information clerk ("information clerk"). Such jobs would be available even if a sit/stand option every hour was added. If such person needed to be in bed for most of an eight-hour work day, no work was available. On questioning by Plaintiff's counsel that assumed the need to use an electric wheelchair, the VE opined that work as an information clerk still would be available and perhaps some portion of the garment sorter jobs. If such person frequently (up to two-thirds of the day) had problems gripping and handling objects due to arthritis and cramping in the hands, the information clerk work would still be available. If headaches required the person to lie down in a dark quiet place for the balance of the day, no work would be available. Finally, if such person might overreact when angry and frustrated and become irritable, aggressive, and display anti-social behaviors, it would be difficult to sustain employment. (R. 68-76).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are outlined nicely by Plaintiff and addressed herein as necessary.

By his decision of July 22, 2011, the ALJ determined that while Plaintiff has severe impairments related to status post total left knee replacement, status post right knee arthroscopy, cervical spine bulging disc and diffuse protrusion, lumbar spine degenerative changes with diffuse protrusions, left foot degenerative changes, and obesity, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 21-

4

30).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision

became the final decision of the Commissioner.

B.

Entitlement to Supplemental Security Income payments requires the claimant

establish that she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C.

§ 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that

"results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at

§ 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See

id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

demonstrate that he has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Moore

v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

5

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises four claims on this appeal: (1) the ALJ's RFC finding is not based on substantial evidence; (2) the ALJ's credibility finding is not based on substantial evidence; (3) the ALJ's finding that Plaintiff can return to her past relevant work is not supported by substantial evidence; and (4) the ALJ committed reversible error in failing to reference key lay evidence of record. (Doc. 13).

On her first claim, Plaintiff urges that substantial evidence does not support the ALJ's assessment of her residual functional capacity ("RFC") because the ALJ erroneously relied on an outdated functional assessment and misstatements of evidence. In particular, Plaintiff argues that the only record supporting the ALJ's RFC assessment was the outdated opinion from Dr. Ronald Kline, a nonexamining doctor. Because he did not have the benefit of later records reflecting: total right knee replacement and post-replacement care; post-

6

automobile accident findings and treatment; MRI studies of the cervical and lumbar spine and left foot; and findings from Nilam Patel, D.P.M., and Arnaldo Torres, M.D., it was error for the ALJ to rely on this opinion.  Plaintiff argues further that the ALJ misstated the evidence related to her knee replacements in concluding her condition was improving such that she was capable of light work with postural and environmental limitations, and that the ALJ improperly relied on the absence of findings in Dr. Torres's reports to conclude such supported his RFC assessment, as case law dictates no inference should be drawn from such silence.  Finally, she urges that the ALJ misstated the evidence related to her daily activities. (Doc. 13 at 12-17).

The Commissioner initially counters that the ALJ properly assessed Plaintiff's RFC for a restricted range of light work.  He notes that the ALJ relied on more than just Dr. Kline's RFC assessment to support his finding on the same.  Thus, the decision reflects consideration of evidence in 2009 and 2010 related to the knees; evidence related to complaints of arthritis in her hands; evidence from Dr. Torres; evidence from Dr. Patel and Daryl L. Miller, M.D., related to her foot pain; and reports related to her claims of cervical and lumbar pain.  The Commissioner also contends that the ALJ properly assessed the evidence of Plaintiff's daily activities.  In sum, the Commissioner maintains the ALJ correctly assessed the whole record in assessing Plaintiff's RFC.  (Doc. 14 at 4-9).

In reply, Plaintiff notes that the Commissioner mischaracterizes her argument. While the Commissioner stated the issue raised was that the ALJ [erred] by relying solely on the opinion of the state agency reviewer, Plaintiff agrees that Dr. Kline's report is the only assessment that supports the ALJ's RFC assessment but contends the gist of her argument is

that the ALJ erred by relying on the opinion because it was outdated and did not consider medical evidence submitted thereafter.  Plaintiff also disputes certain arguments and evidence relied upon by the Commissioner.  (Doc. 15-1 at 1-3).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 416.945(a)(1).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Lewis*, 125 F.3d at 1440.  At this stage of the evaluation process, the burden is on the claimant to show that she can no longer perform her past relevant work.  *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).  In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.  20 C.F.R. § 416.945(a)(3).  The final responsibility for deciding a claimant's RFC is with the ALJ.  20 C.F.R. § 416.927(d).

After careful review of the whole record, I am obliged to conclude that the ALJ's RFC assessment for a limited range of light exertional work is supported by substantial evidence.  Significantly, while Plaintiff correctly criticizes certain findings made by the ALJ, she fails to show from the medical evidence that the ALJ erred in his RFC assessment such that a remand should be required.

As for the RFC assessment, the record here reveals that no treating or examining doctor commented on Plaintiff's functional capacity or physical restrictions and the ALJ was obliged to consider the whole of the evidence in arriving at his RFC assessment.  The only two RFC opinions were from nonexamining, state agency sources who opined that Plaintiff

8

retained the functional capacity to perform light exertional work that did not involve more than occasional postural limitations or any climbing of ladders, ropes, or scaffolds. The first opinion, which is dated October 23, 2009, was completed by a single decision maker, not a doctor.[2] (R. 475-82). The second opinion, which is dated January 21, 2010, was completed by Dr. Kline. (R. 539-46). Here, Plaintiff urges that Dr. Kline's assessment was the only support for the ALJ's assessment and such should not have been relied upon because it was outdated. Because I find the decision to reflect the ALJ's consideration of all the medical record, his consideration of Dr. Kline's report was not error.

Any fair reading of the decision reflects the ALJ's RFC assessment was based on his review of the whole of the medical evidence, not just the report from Dr. Kline. After reviewing such records and other evidence, including Plaintiff's testimony (R. 25-29), the ALJ concluded that Plaintiff was able to perform light exertional work that did not require more than occasional postural limitations or any climbing ladders, ropes, or scaffolds or exposure to extreme vibration. The review included the opinion from Dr. Kline as well as the considerable medical evidence unavailable to Dr. Kline. In summing up his finding, the ALJ noted that this assessment was "supported by the opinions of the medical experts at the State agency and the medical evidence of record," as well as the claimant's reluctantly admitted

_____

[2]I note that, "[i]n Florida, a single decision maker ("SDM") is assigned to make the initial disability determination after 'appropriate consultation with a medical or psychological consultant.' But the 'SDM' designation connotes no medical credentials. Indeed, the SSA's Program Operations Manual System explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.'" *Siverio v. Comm'r of Soc. Sec.*, 461 Fed. App'x 869, 871-72 (11th Cir. 2012).

activities of daily living.  (R. 29).  When the ALJ's review of the whole record is considered,

it is apparent that Dr. Kline's opinion was only one part of the consideration.  In the end, it is

the ALJ's duty to weigh the evidence and arrive at an RFC assessment consistent with that

evidence.  The citation to Dr. Kline's opinion is no cause to find error in that assessment and

Plaintiff otherwise fails to demonstrate that the RFC failed to fairly assess all her limitations.

      As for the claim that the ALJ misstated evidence concerning the success of her two

knee replacement surgeries, I find the comments by the ALJ supported by the medical record.

First, the medical evidence and Plaintiff's testimony reflects that she attempted different

forms of treatment before undergoing knee replacement surgeries.  When all else failed, she

underwent knee replacement surgery for the left knee in July 2009 and for the right knee in

November 2010.  With regard to these surgeries, there is medical support that her condition

improved thereafter.  Thus, as the ALJ stated:

> Records show the claimant underwent a total left knee
> replacement surgery on July 20, 2009 and a total right knee
> replacement surgery on November 16, 2010 (Exhibit 4F, 6F,
> 7F, 17F).  While that fact would normally weigh in the
> claimant's favor, it is offset by the fact that the record
> reflects that the surgeries were generally successful in
> relieving her symptoms (Exhibit 7F, 17F).  Treatment notes
> post both surgeries dated December 1, 2010 indicate the
> claimant was doing quite well, was ambulating without
> assistive devices, and using Percocet effectively for pain
> when needed.  Moreover, the claimant testified at hearing
> that her left knee has completely healed, while her right knee
> is on the way to recovery.  She testified that it was her
> understanding that each knee would take a year to heal.  In
> fact, the claimant testified that she was able to drive a car
> just one month after her right knee surgery.  Accordingly, the
> U.S. Administrative Law Judge finds that the claimant's
> continued improvement supports the position that she is fully

> capable of performing work at the light exertional level with
> the appropriate postural and environmental limitations.

(R. 25-26).  A review of the cited exhibits, in particular, Exs. 7F and 17F, provides substantial

support for the statement that her condition improved.  *See, e.g.* (R. 442-44, 602, 605, 608,

611).  In short, I find no misstatement of the evidence in this respect.

On the other hand, I think Plaintiff is correct to criticize the ALJ's handling of the

"opinion" evidence from Dr. Torres.  In *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988), a

treating doctor opined that the claimant's restrictions were not compatible with his former

work, but otherwise the doctor did not address the type work he could do.  Because the

doctor's silence on that issue was susceptible to differing inferences, the court held that no

inference should be taken.  *Id.* at 703.  Here, Dr. Torres saw Plaintiff in May 2011 for

complaints of sharp pain and numbness in her hands, which she attributed to rheumatoid

arthritis.  By his examination, Dr. Torres questioned the prior diagnosis for rheumatoid

arthritis and ordered additional testing.  He also ordered additional x-rays of Plaintiff's hands

and suggested a follow-up appointment in three or four weeks.[3]  He did not comment on any

limitations.  (R. 639).  In addressing Dr. Torres's report, the ALJ stated in part that, "Dr.

Torres was unable to diagnose rheumatoid arthritis based on his observations and ordered x-

rays of the hands, which were not provided in this case.  Nonetheless, Dr. Torres did not offer

any limitations or restrictions on the claimant's activities of daily living and his opinion was

given great weight (Exhibit 22F)."  (R. 26).  Insofar as the ALJ purported to give great weight

---

[3]I find no evidence of such follow-up appointment.

11

to any opinion concerning restrictions on daily activities, there was no such opinion.  Thus,

consistent with *Lamb*, the ALJ could draw no inference of the same from the doctor's silence.

Along the same lines, I think is Plaintiff correct to the extent that she complains the

ALJ overstated certain testimony of the VE.  By this argument, the ALJ mischaracterized the

VE's testimony concerning the availability of her past relevant work to a person who

occasionally lost grip on objects.  (R. 26).  As the record reflects, the VE opined that if a

person *frequently* would drop things, the past work as a policy holder information clerk would

still be available.  (R. 74-75).  A fair reading of this testimony suggests that other past work

would not be similarly available.  And, the VE rendered no opinion on an assumption for

*occasional* loss of grip as suggested by ALJ.  Thus, the ALJ's characterization of this

testimony as resolving the issue of whether Plaintiff could perform her past relevant work

even with grip issues is only partially supported.

Insofar as these findings relate to the ALJ's RFC assessment, even if they were made

in error, there is no cause for remand.  First, apart from criticizing the ALJ, Plaintiff makes no

showing from the medical evidence that her hands were as limited as suggested by her

counsel at the hearing,[4] or that the RFC assessment for a restricted range of light exertional

work was error.  Nor does she otherwise demonstrate error in the ALJ's review of the medical

---

[4]At the administrative hearing, Plaintiff testified that she cannot grip things tightly and
has dropped things, she has occasional problems with buttons, she cannot open a jar of
pickles, and she can ties her shoes.  As the ALJ noted, the cause of the pain and purported
numbness in the hands was unclear to Dr. Torres who ordered additional tests.  Unfortunately,
there is no follow-up report from this doctor to explain the condition in Plaintiff's hands.
Significantly, I can find no medical support for a claim that loss of grip was a recurring
problem.

evidence in regard to her hands.  (R. 26).  As there noted, the condition was a relatively new

impairment that had not been alleged by Plaintiff as a grounds for disability until the hearing.

As revealed by Dr. Torres's examination, there was reason to question the diagnosis of

rheumatoid arthritis.  *Id.*  And, while the ALJ appears to have drawn an inference from the

doctor's silence concerning limitations, the records otherwise do not reveal any limitations.

Thus, even if the ALJ mis-spoke, Plaintiff fails to demonstrate any prejudice which would

merit a remand and I find none.

On this first claim, the Plaintiff also urges that the ALJ misstated the evidence in

finding that her activities of daily living support a finding that she could stand and walk for

six hours a day and perform light work.  The criticism here is directed toward the ALJ's

finding that Plaintiff could care for her infant without any particular assistance and that she

has not reported any particular help for maintaining her residence.  As the decision reflects,

these comments were part of the ALJ's rationale for discounting Plaintiff's credibility.  (R.

28).  By her second claim, Plaintiff further argues that other reasons stated by the ALJ for

discounting her credibility: that she was receiving government benefits, that she had been

accused of overusing painkillers in the past, that her legal history and earnings history raised

concerns whether her continued unemployment is due to medical impairments, that she

received only conservative treatment for her foot and back, and her purportedly contradictory

testimony at the hearing are unsupported and reflect a selective view of the evidence.  Given

that the pain complaints are not adequately discredited, she urges they should be accepted as

true, and, if so accepted, she is incapable of sustained work activities and a remand is

warranted for an award of benefits.

13

The Commissioner responds that substantial evidence supports the ALJ's credibility finding.  As discussed by the ALJ, the medical record does not include sufficient objective medical findings to support the claim of disabling pain.  Further, there was evidence that she was overusing pain medications (R. 591-92) and the care for her foot and back was conservative, both of which suggest the impairments were not as severe as alleged.  Finally, he urges there were inconsistencies in Plaintiff's claims.  While she claimed she could not do even light work, she admitted that she lifts and cares for her twenty-six pound baby and her testimony concerning driving was contradictory.  Also, her daily activities including driving, caring for her child, doing housework and visiting friends undermines her claim of disabling limitations.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  *Dyer*, 395 F.3d at 1210.  Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole."  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).  A reviewing court will not disturb a clearly

14

articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67

F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

When the whole of this decision is read, it is apparent that the primary reason the

ALJ discounted Plaintiff's claims of disabling symptoms was the lack of medical support.

*See* (R. 25-28).  This medical assessment is not well-challenged by the Plaintiff.  I agree with

Plaintiff that the record evidence does not necessarily reflect the conclusion of medication

abuse and, for me, Plaintiff's "legal history" does not speak to her motive or credibility

regarding work given her employment while in prison.  On the other hand, work history was a

legitimate consideration in assessing her credibility.[5]  While she claimed that all she could do

was lay in bed most of the day sleeping and watching television, she did acknowledge caring

for her child and herself to some extent.  Her testimony concerning how much she could lift

varied, but she acknowledged that she lifted her twenty-six pound child when necessary.

Care for her later impairments related to the degenerative condition in her spine and feet was

conservative, suggesting her complaints were out of proportion with that medical evidence.

She also acknowledged driving after her second knee replacement although she claimed she

stopped due to pain in her back.  In sum, the record presented the ALJ was a "mixed-bag."  In

these circumstances, it is the duty of the ALJ and not the Court to weigh the evidence and

resolve conflicts therein.  Here, given the whole of the record, even if the ALJ perhaps

---

[5]While Plaintiff seeks to discount the work she did in 2008 and 2009, consideration of
that work evidence also reflects on her overall credibility.  Thus, it appears she worked for
about six months at Goodwill and after that she did independent catering work.  Earnings
records for that work in 2009 show earnings in excess of $16,000.

15

overstated the Plaintiff's independent daily activities, I am obliged to conclude there is adequate cause to discount her claims of disabling limitations.

On her third claim, Plaintiff argues that substantial evidence does not support the ALJ's conclusion that she can return to her past relevant work as a cashier, garment sorter, caterer helper, and information clerk.  As for the information clerk position, earning records revealed that such was not performed at the substantial gainful activity level and thus cannot be considered as past relevant work.  Similarly, she argues that the job of caterer helper may not have been performed at the level of substantial gainful activity.  As for her work at Goodwill as a cashier, Plaintiff urges that such was performed for only one month and cannot be considered as a successful work attempt.  The garment sorter position is not similarly addressed, only Plaintiff's claim that she had to leave that position because her legs were aching badly.[6]

In response, the Commissioner urges the conclusion that Plaintiff can perform her past relevant work is supported by the testimony of the VE.  Further, Plaintiff fails to demonstrate that she is unable to perform such work.  He urges that Plaintiff's report

---

[6]On this claim, Plaintiff further urges that because she could not perform light exertional work, the hypothetical questions posed to the VE which assumed she could were incomplete and thus the VE's testimony cannot provide substantial evidence to support the ALJ's vocational decision.  Given my conclusion that the RFC for light work is supported, there no error in this regard.

Plaintiff also references the VE's testimony that it would difficult to sustain employment if the hypothetical person overreacted to situations when angry or frustrated and became irritable, aggressive, and displayed anti-social behaviors, or if such person had headaches that required lying down in a dark room for a day.  However, neither limitation was established by Plaintiff.  While there is a conditional statement set out in an April 1995 psychological screening during Plaintiff's intake at prison (R. 300), the anti-social limitation was not claimed by Plaintiff and it is not otherwise revealed in any medical evidence.

16

concerning how long she worked as an information clerk is unclear and such may well have been performed at the substantial gainful activity level.  Further, Plaintiff's reported earnings from her work as a self-employed caterer are sufficient to meet the definition of substantial gainful activity and there is no corroboration for the claim that such income was split with other family members.  As for her work at Goodwill, the Commissioner urges that while she may have performed the work for less than three months, it is unclear that she left the job as cashier because of any impairment.  In sum, the Plaintiff has failed to show error in the ALJ's conclusions concerning her past relevant work.

At the fourth step of the sequential evaluation, the ALJ must determine whether the claimant is capable of performing her past relevant work.  The review at this step involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of her former work.  In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work."  *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986).  However, at this step, the burden is on the claimant to prove that she cannot do this past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).  This includes showing that certain past work experience is not past relevant work.  *Barnes v. Sullivan*, 932 F.2d 1356, 1359

(11th Cir. 1991) (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989)).

A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-62, 1982 WL 31386, *3 (1982);[7] SSR 82-61, 1982 WL 31387, * 2 (1982). Where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT. *See* SSR 82-61 at * 2.

Plaintiff is not entitled to relief on this claim. Even if Plaintiff is correct that the cashier and policy holder information clerk positions do not constitute past relevant work,[8] she wholly fails to allege (beyond doing so in an argument caption), argue, or demonstrate

---

[7]Social Security Rulings are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

[8]It appears Plaintiff may not have performed these jobs at the level required for substantial gainful activity. To qualify as past relevant work, the work must have been substantial gainful activity. *See Vaughn v. Heckler,* 727 F.2d 1040, 1042 (11th Cir. 1984); *see also Lauer v. Bowen*, 818 F.2d 636 (7th Cir. 1987); *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510(6th Cir. 1994). Under the regulations, "substantial gainful activity" is "work activity that is both substantial and gainful." *See* 20 C.F.R. § 416.972. Substantial work activity is "work activity that involves doing significant physical or mental activities," and gainful work activity is work activity done "for pay or profit." *Id.* The regulations use earnings guidelines to assist in the determination of whether a claimant's past work was substantial gainful activity. *See* 20 C.F.R. § 416.974. Thus, the regulations define "past relevant work" as work performed within the past fifteen years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. *See* 20 C.F.R. § 416.960(b).

that her past work as a garment sorter does not constitute past relevant work.  Without asserting or showing that she is unable to perform the job of garment sorter, her challenge to the ALJ's step four finding and reliance on the VE's testimony fails.  Additionally, the ALJ found that her work as a caterer was past relevant work and such appears to be supported by the Plaintiff's earnings record.  While Plaintiff testified that the earnings of that position were split with two other individuals, her testimony in of itself is insufficient to meet her burden of demonstrating that the caterer work was not past relevant work.  *See* SSR 84-25, 1984 WL 49799, at *3 (1985) (stating that SSA does not rely solely on information from the claimant in determining why a work effort was reduced to the non-SGA level).  Further, Plaintiff was represented by competent counsel at the administrative hearing and no challenge was raised to the ALJ's record findings of past relevant work or to the VE's worksheet and testimony related to the same.  Thus, Plaintiff did not meet her burden of demonstrating that her catering work was not past relevant work, and substantial evidence existed in the record (earnings) on which the ALJ could rely in finding that the caterer position was past relevant work.

Finally, Plaintiff urges that the ALJ committed reversible error in failing to discuss an affidavit from her sister, Cristy Wilson, submitted at about the time of Plaintiff's administrative hearing.  (R. 221-22).  In response, the Commissioner argues that the sister's statements are merely duplicative of Plaintiff's testimony and that they too are unsupported by and inconsistent with the medical and other evidence of record.  Here the ALJ made explicit findings that Plaintiff's subjective complaints were not fully credible and Plaintiff fails to demonstrate error in that conclusion.  Implicit in that finding was the ALJ's rejection of the sister's testimony as well.

19

An ALJ must state the weight accorded each item of evidence and the reasons for his decision to accept or reject the evidence. *Lucas*, 918 F.2d at 1574 (citing *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986)). The lay testimony of family members is evidence of a claimant's subjective allegations of pain. *See Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983). However, an ALJ does not err by failing to make a specific credibility finding as to lay witness testimony if the ALJ's credibility finding as to the claimant sufficiently implies a rejection of lay witness testimony. *See Osborn v. Barnhart,* 194 Fed. App'x 654, 666 (11th Cir. 2006) (citing *Tieniber*, 720 F.2d at 1254-55) (unpublished); *see also East v. Barnhart*, 197 Fed. App'x 899, 901 n.3 (11th Cir. 2006) (finding no error in the ALJ's failure to explicitly accept or reject the daily activities questionnaire completed by claimant's mother because the ALJ obviously implicitly found the mother's statements not credible where the questionnaire essentially "duplicated and corroborated" the claimant's testimony, which the ALJ explicitly found not credible).

Here, Ms. Wilson's submission offers substantially similar observations to the subjective claims made by Plaintiff related to walking and lifting; Plaintiff's need for help with activities such as shopping, cleaning, and cooking; and the fact that Plaintiff slept a lot. Consequently, while the ALJ could have, and perhaps should have, mentioned Ms. Wilson's testimony, the ALJ's specific and explicit credibility determination as to Plaintiff's testimony sufficiently implies a rejection of this testimony as well. *See Osborn*, 194 Fed. App'x at 666.

## D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
4th day of March 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES
## OF EXPEDITED RESPONSE PERIOD

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of Record